(INND Rev. 1/21)



FILED
FEB 28 2022
GARY T. BELL, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

[Use this form to sue for employment discrimination. NEATLY print in ink (or type) your answers.]

Kimberly Wigge
[You are the PLAINTIFF, print your full name on this line.]

v.

AT&T Inc and AT&T Inc Manager Jon Sablan
[The DEFENDANT is who you are suing.]

Case Number  1:22CV067
[For a new case in this court, leave blank. The court will assign a case number.]

[The top of this page is the caption. Everything you file in this case must have the same caption. Once you know your case number, it is VERY IMPORTANT that you include it on everything you send to the court for this case. DO NOT send more than one copy of anything to the court.]

## EMPLOYMENT DISCRIMINATION COMPLAINT

1. My address is: 3832 Kingsbrook Way Fort Wayne, Indiana 46818

2. My telephone number is: (260) 710-7502

3. The Defendant's address is: 208 S. Akard St., Dallas, TX 75202
   (CEO John T. Stankey)

4. This action is brought for employment discrimination pursuant to:

   ☑ Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17.
   [race, color, gender, religion, national origin]

   ☑ Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634.

   ☐ Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117.

   ☐ Other: _____

5. I filed a charge of discrimination with the Equal Employment Opportunity Commission or the Indiana Civil Rights Commission on: 11/30/21

6. The date on my Notice of Right to Sue letter is: 11/30/21

7. The date I received my Notice of Right to Sue letter was: 11/30/21

[DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]

## CLAIMS and FACTS

**DO**: Write a short and plain statement using simple English words and sentences.

**DO NOT**: Quote from cases or statutes, use legal terms, or make legal arguments.

**DO**: Explain when, where, why, and how the defendant discriminated against you.

**DO**: Include every fact necessary to explain your case and describe your injuries or damages.

**DO**: Number any documents you attach and refer to them by number in your complaint.

**DO NOT**: Include social security numbers, dates of birth, or the names of minors.

**DO**: Number your paragraphs. [The first paragraph has been numbered for you.]

1. Who: I, Kimberly Wigge, have been employed with Centennial Wireless/ATT Wireless since 10/4/1999 and I was terminated on 6/21/2021. In the near 22 years I have been on any disciplinary actions for attendance, performance, Code of Business Conduct, or any performance related concerns. I have earned numerous performance awards for being in the top 10% in customer service and job performance in 2001, 2003, 2005, and 2008 and top 20% in Customer Service and job performance in 2004 and 2009. (Note: President's Club and Centurion's Club) I also had the honor of being selected to attend the Manager Development Program which is designated for high performing Managment Team Members. I was place on a Performance Commitment Plan on 4/2021 and was informed that is was a 60 day performance plan and that my team's performance was to be at 100% attainment for sales, attendance, and customer satisfaction within 60 days (see explantion below) goal by 6/21/21.

...Continued on addtional page(s)

[DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]

RELIEF – If you win this case, what do you want the court to order the defendant to do?
Backpay (loss of earnings and future earnings), punitive, and emotional financial compensatory damages from AT&T Inc. In addition, backpay (loss of earnings and future earnings), punitive and emotional financial compensatory damages directly from Manager Jon Sablan's personal assets. and attorney fees

DOCUMENTS – I have attached a copy of the following documents:

☐ Charge Of Discrimination form filed with the Equal Employment Opportunity Commission or the Indiana Civil Rights Commission

☑ Notice of Right to Sue letter

☐ Other: copie of summary of charges filed with EEOC

FILING FEE – Are you paying the filing fee?

☑ Yes, I am paying the $402.00 filing fee. I understand that I am responsible to notify the defendant about this case as required by Federal Rule of Civil Procedure 4. [If you want the clerk to sign and seal a summons, you need to prepare the summons and submit it to the clerk.]

☐ No, I am filing a Motion to Proceed In Forma Pauperis and asking the court to notify the defendant about this case.

[Initial Each Statement]

___ I will keep a copy of this complaint for my records.
___ I will promptly notify the court of any change of address.
___ I declare **under penalty of perjury** that the statements in this complaint are true.

Signature                                                        Date 2/28/22

[DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]

Continued.......

Sales Attainment
Sales Attainment includes New Sales Revenue (NSR), Gross Adds, Strategic Broadband and Strategic Products. Each Team Manager was given a for each rep that actively scheduled at the start of the month; however, the number would not be adjusted to support the updated head count that we would close the month out with.
- Example – we could start the month with 15 reps actively scheduled on 7/1/21, however there may only be 8 reps actively scheduled by the end of the month, because reps quit, were termed, or went on temp leave and the requirement for the team goal is not adjusted.

CRIFT
This is a customer survey score, we (Team Managers) were never informed on how the surveys would be sent to the customer only that it was random. When we reviewed the call and found that the customer gave our rep a bad score due to another issue, not anything with our rep – there was no way to dispute and adjust the customers score

Adherence
This is the amount of time that the rep adheres to their schedule, however this is not feasible if the rep is on the phone with the customer and they are in the middle. The percentage for the month is 94%, and the only way for this to be met is to manipulate the numbers (not taking their full paid break), finishing their training early but not updating their schedule, etc.

My manager Jon Sablan met with me virtually when possible and he would verbally recognize that there was team improvement, however it does not seem, if any, that the improvements were documented.

I along with three other Team Managers, Angelique Mayo, Margaret Wiley, and Robert Stratton, were terminated for performance with related to inadequate coaching and/or development to be successful. We were placed on a 60-day performance plan and regardless of the team's successful improvement, we were terminated without cause and without warning and without proper steps, Coaching, and no actionable e plan for success.

We were all over the age of 40 and have been with the company for more than 15 years. 3 of the 4 terminated Managers were women. When they company started hiring our replacements, they are in their early 20's with sales experience, however, have questionable sales practices and review of their monthly statistics were not as comparable or fair to lead to either a 60-day performance plan or termination.

2) What:

I, Kimberly Wigge, have been employed with Centennial Wireless/ATT Wireless since 10/4/1999 and I was terminated on 6/21/2021 at 3811 Illinois Road, Suite 100, Fort Wayne, IN. In the near 22 years I have been with the company, I **_have never been on any disciplinary actions for attendance, performance, Code of Business, or any performance related concerns._**

I have earned numerous performance awards for being the top 10% in customer service and job performance in 2001, 2003, 2005, 2006 & 2008 and top 20% in customer service and job performance in 2004 & 2009. I also had the honor of attending the Manger Development Program in 2015 designed for high performance Management Team Members.

I was placed on a Performance Commitment on 4/2021 and was informed that it was a 60-day performance plan and that my team's performance was to be at 100% attainment for sales, adherence, and customer satisfaction within 60 days (see explanation below) goals by 6/1/2021.

Sales Attainment
Sales Attainment includes New Sales Revenue (NSR), Gross Adds, Strategic Broadband and Strategic Products. Each Team Manager was given a for each rep that actively scheduled at the start of the month; however, the number would not be adjusted to support the updated head count that we would close the month out with.
- Example – we could start the month with 15 reps actively scheduled on 7/1/21, however there may only be 8 reps actively scheduled by the end of the month, because reps quit, were termed, or went on temp leave and the requirement for the team goal is not adjusted.

CRIFT
This is a customer survey score, we (Team Managers) were never informed on how the surveys would be sent to the customer only that it was random. When we reviewed the call and found that the customer gave our rep a bad score due to another issue, not anything with our rep – there was no way to dispute and adjust the customers score

Adherence
This is the amount of time that the rep adheres to their schedule, however this is not feasible if the rep is on the phone with the customer and they are in the middle. The percentage for the month is 94%, and the only way for this to be met is to manipulate the numbers (not taking their full paid break), finishing their training early but not updating their schedule, etc.

My manager Jon Sablan met with me virtually when possible and he would verbally recognize that there was team improvement, however it does not seem that the improvements were documented. I was informed that I was being terminated on 6/21/21 due to performance.

Around January of 2020 we were informed that our Center would be being transition to sales, this has a lot of the representative's concerns, so we as Team Managers provided positive feedback and gave the representatives the information to contact our Employee Assistance Program. Management assured the representatives that we would be given the appropriate training to be successful. We started our 6- or 8-week classroom training mid to late February 2020 and then COVID effected the training around 3/16/2020. The day that COVID was "announced" we had some representatives that made the decision to stay and continue their training, however we had a lot of representatives take the available paid COVID leave that the company supplied (I believe it was 6 weeks - paid), then they would take the additional leave that was provided by the Company for COVID leave (I believe that was an additional 30 days - paid), then there was some time that was covered for additional non-paid time. The representatives that stayed were given the directive that they had to go on the phone and take

phone calls, still not fully trained to take the assist the customers effectively. That includes but not limited to, how to log in and out of the phones, how to place the customers on hold, how to do a warm transfer, etc.

Within the next couple of weeks, the representatives were given an additional 5 days of training that was to cover the remaining training material. However, when the representatives were on leave returned, we allowed them to start their training all over again, virtually.

This was a brand-new training experience for everyone, and it was hard for the representatives to adjust to and made them extremely uncomfortable. With the representatives not being in the office to do peer side by side training and have a trainer/manager to help them navigate through the calls as a training opportunity (which is the best way for this group to learn) or able to listen to live calls and watch how the navigate the system this made things even worse for the representatives.

As one of the managers that did not take any COVID leave I worked hard to make it was safe working environment for the representatives that work at the center, to get the center set up to support 6 feet social distancing, doing extra disinfecting, ensuring that everyone that was in the center received the required masks daily and any additional tasks that were required for in the office workers.

The Managers that stayed in the office to work was supposed to get an additional pay each month "until further notice", I only received mine for one month and do not recall any additional pay on my checks or stubs.

I along with three other Team Managers, Angelique Mayo, Margaret Wiley, and Robert Stratton, were terminated for performance with related to inadequate coaching and/or development to be successful. We were placed on a 60-day performance plan and regardless of the team's successful improvement, we were terminated without cause and without warning and without proper steps, Coaching, and no actionable e plan for success.

We were all over the age of 40 and have been with the company for more than 15 years. When they company started hiring our replacements, they are in their early 20's with sales experience, however, have questionable sales practices.

3) When:

I, Kimberly Wigge, was terminated on 6/21/2021.

4) Why:

I, Kimberly Wigge, was terminated due to my gender, age, and unfairly targeted as others in similar or same situations based on monthly scorecards or other similar statistical monthly goals for other Managers were not met, but those managers in similar or same situations are still employed.

5) Copy of summary of charges sent and filed with the Equal Employment Opportunity Commission.

EEOC Form 161 (11/2020)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Kimberly R. Wigge<br>3832 Kingsbrook Way<br>Ft Wayne, IN 46818 | From: | Indianapolis District Office<br>101 West Ohio Street<br>Suite 1900<br>Indianapolis, IN 46204 |

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 470-2021-03245 | Marc A. Fishback,<br>Enforcement Supervisor | (463) 999-1179 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

**- NOTICE OF SUIT RIGHTS -**
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Michelle Eisele*     11/30/2021

Enclosures(s)     **Michelle Eisele,**
**District Director**     *(Date Issued)*

cc:  Marybeth Dunne
ATT INC
Lead Consultant, EEO
308 S Akard St
Dallas, TX 75202

Enclosure with EEOC
Form 161 (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was issued to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do *not* relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*